# McCARTNEY v. FLETCHER.

EQUITY; DISCOVERY; DEMURRER; HUSBAND AND WIFE; ADMINIS-
TRATION; MULTIFARIOUSNESS; ANSWER AS EVIDENCE; AD-
MINISTRATION; BURDEN OF PROOF.

1. To entitle a complainant in equity to discovery, the facts of which
disclosure is sought must be of a certain and specific character,
and the right of the complainant to the benefit of the defend-
ant's oath is limited to such material facts as relate to the
complainant's case, and does not extend to a discovery of the
manner in which, or the evidence by means of which, the
defendant's case is to be established, or to any discovery of
the defendant's evidence; and upon every bill for discovery
the defendant has a right to resist by demurrer any inquiries
which call upon him to disclose the nature and character of
his own title to the subject-matter of the controversy.

2. A bill of complaint by an administratrix against the widow of the
intestate, calling for a particular statement of every item of
property received by the defendant from her husband or any
other person during thirty years of married life, or that came
into her possession and control during that period, and all the
gains and profits thereof; and to account for the same or such
parts thereof as she had in her possession or under her control
at the death of her husband, is demurrable for vagueness and
indefiniteness, and also because of the great lapse of time in-
volved in the proposed inquiry and discovery; and such objec-
tion may be taken advantage of by general demurrer.

3. Under Section 877, R. S. D. C., providing that a married woman
shall not be compellable to disclose any communication made
to her by her husband during their married life, a widow can-
not be required by a bill in equity to disclose all of the special
circumstances of and attending the receipt of any and all
property received by her during the period of her married
life; and such question of privilege may be raised either by
demurrer or by answer to the bill.

4. An administratrix, as such, has no interest in the rents and profits
of real estate conveyed by the intestate during his lifetime to
his widow, or to a third person, and is not entitled to discovery
of the amount thereof, upon the allegation that the deeds of
the real estate were made and intended to be in trust for the
intestate and his heirs.

5. A bill in equity in which the complainant demands several matters of different natures against several defendants is multifarious; and a demurrer for multifariousness, which always goes to the whole bill, need not specify the parts of the bill which are claimed to be multifarious.

6. The answers of several defendants to a bill of complaint, which answers are required to be made under oath, are evidence for the respective defendants, so far as they are responsive to the allegations of the bill, and as evidence will prevail unless overcome by the testimony of two witnesses or of one witness and clear corroborating circumstances.

7. An administratrix cannot, by assuming the widow of the intestate to have been his agent during their married life, instead of his widow merely, by going into a court of equity and charging the widow with all the moneys and receipts of income, of whatever nature or kind, of the husband during the entire period of her married life, require her to acquit herself of such receipts by showing how the moneys and other property were disposed of or invested, and upon failure so to discharge herself hold her liable therefor; in such a case the burden of proof is upon the complainant.

8. The evidence in such a case examined and considered and *held* to be too defective, obscure and doubtful to overcome the evidential force and effect of the sworn answer of the defendant widow.

No. 616. Submitted January 12, 1897. Decided April 27, 1897.

HEARING on an appeal by the complainants from a decree dismissing a bill of complaint in a suit for discovery and account of the personal estate of an intestate. *Affirmed.*

The COURT in its opinion stated the case as follows:

Cases Nos. 616 and 617 were argued together, because the evidence was all taken in the case No. 616 and introduced into the other one, No. 617, by stipulation. But the cases are entirely different in their nature and character, and as to the relief prayed, and are between different parties and depend upon facts and principles of law that are not common to both cases. The cases therefore must be considered separately, though portions of the great mass of the evidence taken apply to each case.

The first of these cases, that of Peter McCartney and

Annie C. McCartney, his wife, administratrix of William Fletcher, deceased, against Susan Fletcher, Charles P. Fletcher, Catharine Laughlin, Thomas Broderick, John Lynch and Timothy Daley, was filed for discovery and account of the personal estate that was supposed to have belonged to William Fletcher, at the time of his death, alleged to have been concealed and secreted from the administratrix of the deceased by his widow, Susan Fletcher, the first named defendant. There are other objects sought to be attained by the bill, though of a secondary character, and which seem to be intended to have a bearing or reflection upon the objects and purposes of the bill in No. 617.

The bill is very elaborate in its statements of the affairs of the deceased, and presents a very remarkable case. It seeks discovery and account from a surviving wife, for and in respect of all the transactions, dealings and earnings and expenditures of the husband during his married life, covering a period of about thirty years; upon the theory that the wife was the agent of the husband, in the general control and management of his business, and therefore liable to account as agent for everything in the way of money or property that came into her hands during the long period of their married life.

It is not charged or pretended that the wife was formally or expressly constituted agent for the management of the business and affairs of the husband, but it is insisted that she should be treated and held liable as the constructive agent of the husband, by reason of the fact that she was active and industrious and frugal in taking care of the earnings of her husband, and that the husband, not a very careful or frugal man himself, confided largely to her care and general management his earnings and affairs; and that she did manage and take care of his earnings for him.

It appears that William Fletcher died intestate in March, 1893, then aged about sixty-six years. He had been twice married. His first wife died in 1861, and he was married

to his second wife in 1863.  By his first wife he had two children, who still survive—Annie C. Fletcher, who was born in 1856, and who is now the wife of Peter McCartney, and William F. Fletcher, who was born in 1859.  By his second wife, Susan Fletcher, he had five children—namely, Mary J., who was born in 1864, and who is now the wife of William E. Collier, to whom she was married in 1888; Charles P. Fletcher, born in 1866; Susan E. Fletcher, born in 1874; Kate E. Fletcher, born in ——, and James Fletcher, born in 1881.  Mrs. McCartney, the daughter by the first wife, became administratrix of her father's personal estate; and she and her husband, Peter McCartney, are the complainants in this suit for discovery and account of the personal estate and for other purposes.

The deceased, William Fletcher, began life as a laborer, and wholly without education.  He was a man, however, of strong native sense, and of considerable energy and enterprise.  Before his second marriage he had become a contractor, and owned horses and carts, and employed hands to work in the performance of his contracts; and in this way he had acquired some property, though not a great deal.  His second wife was as illiterate as himself, and neither could read nor write, except that the husband had learned barely to write his name.  But the record discloses the fact that the second wife was a hard-working, careful and thrifty woman, and manifestly did much not only to encourage her husband to enterprise and success, but that she was mainly instrumental in saving and taking care of his earnings.  She was without property when she married the deceased; but she was a help-mate to her husband in the full sense of the term, and this he fully appreciated by the manner in which he confided to her the full participation in the management of his affairs.  Her family, consisting of her husband's two infant children by his former wife and her own five children, from the time of their birth, were well cared for, and genteelly brought up and educated;

and this was principally by means of the work and management of the defendant, Susan Fletcher. The children all remained together as one family, until such of them as married went to their own homes.

The administratrix of the deceased, after returning to the Orphans' Court an inventory of the personal estate of the deceased, under oath, amounting to near about $10,000, filed the present bill, in which the widow is charged with having received into her possession, and then concealed and withheld from the administratrix, personal assets of the estate of the deceased, to the amount of $162,872.84, " and which sum complainants believe and aver, *represented in one form or other personal property*, and was personal estate of the deceased at the time of his death, and is now in the possession and under the control of the defendant, Susan Fletcher, and is wrongfully withheld by her from complainants, and especially from the said Annie as administratrix; and for which, with the gains and increase thereof, the said Susan should be required to account to the complainants, and, upon such accounting, be required and compelled to deliver and pay over to complainants, or the said Annie as such administratrix," &c.

As the foundation for this general charge of concealment and withholding of the personal assets of the estate it is alleged in the preceding paragraphs of the bill that the decedent, in his lifetime, was actively engaged in business for a period of upwards of thirty years, as the complainants are informed, and that during many years of that period he was the owner of horses and carts and the appliances for conducting the business of contracting for and performing public works in the way of street improvements, etc., in the District of Columbia; and that, of her personal knowledge, he was engaged during the last mentioned years in such business upon a large and extensive scale, and with great profit to himself, as she has understood. That while complainant knew that the decedent for a long time prior to

his death had been, and at the time of his death was, reputed to be of great wealth and the owner of a large estate, both real and personal, she was without exact knowedge in the premises, and was at the time of his death dependent for information therein as to the personal estate upon the defendant, Susan Fletcher. That it had been the custom of the decedent, for many years prior to his death, to deliver and intrust for safe keeping all his moneys and securities, as received from time to time, to the defendant, Susan Fletcher, and that at the time of his death the defendant Susan was supposed to have, and the complainant avers the fact to be that she then did have, not only exact and exclusive information and knowledge of the nature, quality, and extent of the personal estate, but that she also had in her possession or under her control the entire personal estate of the deceased, including moneys, securities, evidences of debt, books of account, and memoranda in regard to his affairs and effects; and complainant avers that it therefore became and was the duty of the defendant Susan, after the death of her husband, to make disclosure of the same, fully, frankly, candidly, and without concealment, to the complainant and the other parties in interest with her, the said Susan, in the estate of the deceased, and that it became, and was especially, the duty of said Susan to make such disclosure to the complainant Annie after her appointment as administratrix of the deceased, and without concealment or reserve to turn over and deliver the whole of said personal estate to the complainant as administratrix. Yet so it is, as complainant believes and avers, that at no time since the death of the intestate, and neither before or since the appointment of the complainant Annie as administratrix, has the said Susan made such disclosure truly of the entire personal estate of the decedent, or delivered the same to the complainant, although frequently called upon so to do; but, to the contrary, and in violation of her duty in the premises, the defendant Susan has, when called upon for

information in the premises, made statements and representations in regard to the personal estate of the deceased which have been contradictory, inconsistent, false, evasive, and misleading. The complainant then proceeds to aver certain statements made by the defendant Susan immediately after the death of the intestate in regard to the extent and amount of the personal estate of the deceased; but which were prior to the time of making and filing the sworn inventory of the personal estate of the deceased, by the complainant, as administratrix, in the first instance; and that, by reason of the subsequent misrepresentations and inconsistent statements of the defendant Susan as to the extent of the personal estate of the deceased, the complainant was induced to amend and change the inventory of the personal estate returned to the court by her, as such administratrix. That, upon the appointment of the complainant Annie as administratrix of the personal estate of the deceased, the defendant, Susan Fletcher, turned over to her as such administratrix the articles of property and evidence of debt mentioned and described in the amended inventory as being all of the personal estate of the decedent in the possession or under the control of her, the said Susan, and that the complainant then being without other or better information, the same were returned as the whole of the personal estate of the deceased; and complainant avers that no part of the $4,000, consisting of debts due the decedent, mentioned in the original petition to the Orphans' Court, was included in the $10,000, which was stated to be the amount of the personal estate of the deceased in the amended petition.

It is next alleged that certain notes returned as constituting part of the personal assets of the estate are not properly any part of the personal estate of the deceased, and should therefore be stricken from the list of debts due the estate; that such notes were fictitious evidences of debt given by Catharine Laughlin upon a mere pretended sale to her of

certain real estate by the decedent, but which sale was merely sham and colorable, and the notes given for the nominal purchase money were never intended to be collectable debts; and that the farm called "Sharon," for which the notes were given, was conveyed by the deceased without consideration, and was intended to be in the nature of a conveyance in trust for the benefit of the grantor. It is also alleged that a certain investment in the stock of the Washington Asphalt Block and Tile Company, appraised at $2,500, does not in fact constitute assets of the estate of the deceased, and is not available as such; and the shares of the stock of the company, subscribed for by the deceased, stand in the name of Charles P. Fletcher, a son of the deceased, with a balance of $2,500 still due thereon. The subjects of these allegations have no necessary or apparent connection with the main objects of the bill, so far as the defendant Susan is concerned.

It is alleged that the complainant had made efforts to ascertain the true extent, nature and value of the personal estate of the deceased, but without success; but, from information received, the complainant believes that in none of the statements made by the defendant Susan has she made true, frank and full disclosures of the personal assets and estate of the deceased in her hands or under her control; but that the said Susan has wilfully and knowingly misrepresented the same; and that, at the time of the death of the intestate, as complainant is informed and believes, and so charges, the defendant Susan had in her hands and control, and still has in her hands and control, large sums of money, and securities, and obligations of various kinds for the payment of money, being of the personal estate of the deceased, the amount of which moneys, and the character, nature and value of which securities and obligations are unknown to the complainant because the defendant Susan had refused to make full and true disclosure in regard to the same, and to deliver them over to the complainant. That

by reason of the fraudulent secretion and concealment of such moneys and securities, the amounts, and the nature and value of such securities, cannot be ascertained by the complainant as administratrix.

It is then alleged that the deceased was possessed, in 1871, of securities and obligations of the corporation of the city of Washington to the amount of $50,000; and that during the period of his married life with the defendant Susan, he had entered into and performed various contracts for public works, some in his own name and others in the name of himself and other persons as partners, and that the profits realized and received by the deceased therefrom amounted to a great many thousands of dollars; which, in addition to some smaller amount of receipts, made a total in moneys and securities of $183,441.39, received by him and which came into his possession during the period of his married life with the defendant Susan. The complainant avers that she believes such estimate to be reasonable, and that the gains and increases of said sum, derived therefrom by the deceased by way of interest and dividends, *exclusive of sums* received for rents from real estate, in which a portion of said sum was invested, was in excess of $30,000.

By paragraph 8 of the bill, it is alleged that the deceased, during the period of his married life with the defendant Susan, purchased and paid for out of the moneys which came into his hands, as in the preceding paragraph of the bill stated, and became the owner of numerous and valuable parcels of real estate in the District of Columbia, as shown in the following statement of dates, and references to the land records of the District. Then follows a long descriptive list of the real estate purchased by the intestate, and the supposed values thereof; and in the ninth paragraph of the bill is stated an account of the supposed rents and profits received by the deceased from such real estate during his married life with the defendant Susan, amounting in the aggregate to the sum of $137,245, and of which sum,

after deducting all expenses and outlays of every kind and description, there remained to the intestate at least the sum of $50,000, which, added to the sum of $112,872.84, makes the sum of $162,872.84, which, it is alleged, constituted the personal estate, in one form or other, of the deceased at the time of his death.

It is alleged in the bill that the deceased wished to make it appear that he was without means or property, in order to avoid being importuned to become surety for others, or to engage in speculations and ventures, and for that reason he allowed his wife Susan to collect all the rents from his real estate, caused his real estate to be assessed in her name, and made and recorded fictitious deeds of trust, and conveyed various parcels of his real estate to third persons, for apparent valuable considerations, and such persons would thereupon convey the same to his wife Susan for the like apparent valuable consideration. Of this character of conveyances there are four specified in the bill—conveying property of the alleged aggregate value of $37,694. Two of these conveyances were made by the deceased and his wife Susan to the defendant, Kate Laughlin, the sister of the wife Susan, who conveyed the same property to said Susan Fletcher, for the same recited consideration as that mentioned in the deeds to her, the said Kate Laughlin. Two other deeds made by Fletcher and wife, one to Samuel Cross, who conveyed the same property to the wife Susan, and the other to Patrick Daley, who thereupon conveyed the same property to the wife Susan. There are certain other parcels of real estate alleged to have been purchased and paid for by William Fletcher, the husband, and the deeds for which were taken directly to and in the name of the wife Susan. All these various deeds of conveyance made to the wife are alleged to have been made to the wife Susan in trust for the husband and his heirs, though the deeds contain no declaration of trusts, but are all absolute, unqualified conveyances of the property described therein.

The bill demands. of the defendant, Susan Fletcher, the most varied and comprehensive discovery in relation to all transactions between herself and her late husband, during her married life, that in any manner had reference to the acquisition, the possession, and disposition of property, of every sort and description ; and this, too, without regard to the fact, that the investigation and accounting proposed would extend over a period of thirty years, and that, for want of education, neither husband nor wife could write or keep an account of their numerous transactions.

In the bill it is alleged in regard to the deeds made to the wife Susan, that the said Susan, at the time of her marriage, had no estate of her own, and that there was no consideration paid by her for said conveyances, and that said deeds were not executed or caused to be executed by her husband with the intention or for the purpose of investing her with any equitable estate in the lands conveyed; nor did the husband intend that the said deeds, or any or either of them, should invest her with any separate estate in the lands conveyed ; but the same were made and caused to be made by the husband solely with the object before stated, and that the wife Susan, at the time of making the said deeds, knew well and understood that the lands conveyed were to be held by her simply as a trustee, and subject in all respects to the use, control and dominion of her husband; and the complainant avers that the defendant Susan in equity now holds the lands conveyed simply as trustee for the heirs of her deceased husband, "and that *she should be compelled to disclose and account to complainant for, among other things, all rents of said lands which came into her possession prior to the death of her husband;*" and if the husband intended that the deeds should, for the respective considerations mentioned, pass title to the lands conveyed, and not simply in trust for him and his heirs, inasmuch as the considerations have not been paid, the court should, upon the facts so appearing, declare a lien upon the several parcels

for the said several and respective considerations mentioned in the deeds, with interest.

In this same bill of complaint filed by the representative of the personal estate of the deceased alone, and to which the heirs at law of the deceased are not parties, it is alleged that a certain farm in Virginia called "Sharon," was conveyed by William Fletcher and wife to Kate Laughlin, for the recited consideration of $10,000, and that a deed of trust for the benefit of said Fletcher was made to Edmund Burke by said Kate Laughlin, to secure $6,000 of the apparent consideration, and for which sum promissory notes were given; but that the transaction was in fact fictitious, and that no consideration passed, and none was intended to be paid; and that the farm was intended to be held in trust for the grantor. Discovery in regard to this transaction is prayed, and that the farm be conveyed to the heirs at law and widow of the deceased, and that the promissory notes given by the said Kate Laughlin be surrendered to her.

The defendants were required upon their several and respective corporeal oaths to make full, true, direct, and perfect answers to all and singular the matters and things in the bill stated and charged, and more especially that the said Susan Fletcher state and be required to set forth and disclose with particularity in her answer—1st. What property, if any, and the value thereof, she had at the time of her marriage to William Fletcher, deceased; 2d. What property she received during her marriage with William Fletcher, otherwise than directly or indirectly from him, and the person or persons, source or sources from which such last mentioned property, if any, was received and derived, and the date or dates, if more than one, of the receipt or several receipts thereof, and the specific character and value thereof; 3d. What property, if any, she received directly or indirectly, *from her said husband during her marriage with him, and in and as to which she claimed or now*

*claims by reason of such receipt, and the circumstances thereof,* any individual or separate estate, legal or equitable, and the date and several dates of the ·receipt and receipts thereof, *and the special circumstances in each case attending the same,* out of which or upon which *such claim of individual or separate estate is based, with full and particular statement in detail of the kind, nature and value of such property,* and if such claim of· individual or separate estate therein *be based in whole or in part upon any instrument or instruments of writing, not of record, that she attach a copy or copies of such instruments to her said answer;* 4th. That she state and be required to set forth and disclose whether all the property of every description which she now holds, and all property of every description in and as to which she claims any individual right of ownership, be the same in her personal possession or in the possession of other persons, and held in any manner for her use, is not property which was originally owned by her late husband, and the gains and· increase which have arisen therefrom; 5th. That she be required to state and set forth in her answer fully and completely, and without reserve or concealment, the nature, quality, character and value of all personal property of every description which she now has in her possession or under her control, and whether held personally by her or by others for her use, specifying the same in detail and whether moneys, bonds, stocks, promissory notes, open accounts, or other form whatsoever of property, and in whose possession such property is, and in whose name such bonds and stocks are listed, and to whom such promissory notes are payable, and the source and sources, person or persons, from whom said property was derived by her.

It is also charged that certain stock of the Second Workingmen's Building Association, amounting to about $1,400, standing ·in the name of the defendant, Susan Fletcher, is property that belongs to the estate of the deceased, and the complainant prays that such stock may be paid for and

delivered to her as administratrix of the deceased; and it is in respect of this stock that the defendants, Thomas Broderick, John Lynch, and Timothy Daley, the principal officers of the association, are made parties defendant to this cause.

There is also a prayer that a receiver be appointed to collect the rents and profits of the real estate *pendente lite*.

The defendant, Susan Fletcher, and the other defendants, all demurred to the bill. The grounds of the demurrer were—1st. That there were no sufficient grounds shown by the bill to entitle the complainant to relief; 2d. That the bill, in stating the matters against the several defendants, is multifarious in its matter and subjects, and is therefore unduly oppressive and expensive to the several defendants, in making defence; 3d. And the defendant, Susan Fletcher, further insists, by way of demurrer, that the bill does not allege sufficient facts to entitle the complainant to the discovery prayed; 4th. That the complainant is not entitled to any relief as to the conveyances of the real estate mentioned in the bill, and this defendant is not compellable to make any discovery concerning the same as in the said bill prayed; 5th. That the complainant is not entitled to or interested in any of the separate or individual estate of this defendant, personal or mixed, and this defendant is not compelled to make discovery thereof or concerning the same as prayed in the bill. For these, as well as other defects, apparent on the face of the bill, this defendant demurs thereto and to the discovery sought, and prays judgment, &c. And as further ground for demurrer, assigned by the defendant, Catharine Laughlin, she says if it were true as alleged in the bill that the deed to her for the farm called "Sharon" was in trust for William Fletcher, yet the complainant, as administratrix of the deceased, has shown no right, power or authority that would entitle her to the relief prayed in respect of said farm, or any relief whatever.

The court below overruled the demurrers, except as to

the prayer of the bill requiring the defendant Catharine Laughlin to produce and deposit in the registry of the court the deed referred to in the bill, and alleged to have been made, though not delivered, to the defendant Susan as widow, and the heirs at law of William Fletcher, deceased, for the farm called "Sharon." To that extent the demurrer was sustained; but in all other respects the demurrers were overruled, and the defendants were required to answer the bill.

*Mr. Hugh T. Taggart, Mr. Robert Christy, Mr. W. V. R. Berry* and *Mr. A. S. Worthington* for the appellants:

1. It being averred in the bill and established by the evidence that the defendant, Susan Fletcher, had no separate estate or property of her own ; that all the means which she and her husband had were acquired by and belonged to him; that it was agreed between them that the title to his real estate should be vested in her to the end that she might manage that, as well as his personal property, as his agent ; that the deeds by which the legal title to the real estate involved in these suits was vested in her were made in pursuance of this understanding and agreeement; that the purchase money in each case was paid from funds belonging to him; that the understanding between him and her at the time each of the deeds in question was made was that she was to hold the same as his agent and trustee and for his benefit; and that this agreement was actually carried into effect up to the time of his death ; it follows that although there was no writing or memorandum signed by her evidencing the agreement, his heirs as to the real estate, and *a fortiori* his administratrix as to the rents and other personalty, are entitled to have the agreement enforced, notwithstanding the Statute of Frauds.

The Statute of Frauds is no bar to a suit brought to enforce a parol agreement in reference to lands: (1) When in pursuance of such parol agreement the title has been vested

for a particular purpose, only, in a grantee who refuses to carry out that purpose or undertakes to apply the land to other uses—the grantee in such cases being held to be a trustee *ex maleficio*. (2) When the purchase money is paid by one not a party to the deed, in which case the grantee holds in trust for such person—this principle in the case of a conveyance to a married woman at the instance of her husband being subject to the qualification that when the transaction would appear on its face to be a reasonable provision for her, he will be presumed to have intended to settle the property upon her in the absence of satisfactory evidence to the contrary. (3) When the grantee is an agent, and the conveyance is made to the agent either in direct pursuance of the terms of the agency or upon a consideration paid by the agent out of the funds of the principal. (4) When confidential and fiduciary relations exist between the grantee and the person who conveys, or causes to be conveyed, the property to such grantee, in which case the presumption of law is against the validity of the deed until that presumption is overcome by satisfactory evidence. (5) Generally, wherever the application to the case of the Statute of Frauds would make it an instrument to protect a fraud. (6) Where the conveyance has been made upon the faith of a promise or understanding on the part of the grantee that he will apply the property to certain uses—this upon the ground that there has been such part performance of the agreement by the party who has made the conveyance or caused it to be made as takes the case out of the statute. See in support of these propositions, *Peugh* v. *Davis*, 96 U. S. 332; *Brick* v. *Brick*, 98 U. S. 514; *Young* v. *Peachy*, 2 Atk. 256; *Haigh* v. *Kaye*, L. R. 7 Ch. Div. 469; *Larmon* v. *Knight*, 140 Ill. 203; *Thompson's Lessee* v. *White*, 140 Ill. 202; *Oliver* v. *Oliver*, 4 Rawle, 140; *Rollins* v. *Mitchell*, 52 Minn. 41; *Newell* v. *Newell*, 14 Kan. 202; *Snodgrass* v. *Snodgrass*, 40 Kan. 494; *Brison* v. *Brison*, 75 Cal. 525; *Ryan* v. *Dox*, 34 N. Y. 301; Perry on Trusts, Sec. 171.

The Supreme Court of the United States has more than once held that one who obtains a conveyance of land which is absolute on its face may nevertheless be held as a trustee *ex maleficio* for the real 'owner. *Angle* v. *Railroad Co.*, 151 U. S. 1; *Felix* v. *Patrick*, 145 U. S. 327. In a case in this jurisdiction it was held that where a husband purchased real estate with his own means, but placed the title in his wife's name upon her verbal agreement to make a will devising the property to him, such agreement will be enforced in equity after the wife's death by holding her heirs as trustees for the husband—even where the heirs are infants. *Sherman* v. *Sherman*, 20 D. C. 330. See also *Mannix* v. *Purcell*, 40 Ohio St. 562; *Hudson* v. *White*, 17 R. I. 519; *Birch* v. *Balgrave*, Amb. Ch. 265; *Wallace* v. *Bowers*, 28 Vt. 68.

Several of the cases above cited refer to the application of the doctrine of confidential relations to transactions between husband and wife. It is familiar knowledge that where one who holds a position of trust and confidence to another obtains from that other a gift of either real or personal property, the transaction is void in equity unless fully explained, the presumption being that the equitable title is in the donor. While this doctrine does not apply in its full extent where the relationship between the parties to the transaction is merely that of husband and wife, where the property transferred is of considerable amount and is all that the husband has, so that by his wife's decease, intestate, where there are no children, or by her deed or will, where there are children, he and his family may be left penniless, while his property goes to others, and especially where, as in this case, the wife, through a long series of years, including the period when the conveyances are made, is the trusted agent of her husband in the management of his estate, the doctrine does apply to its fullest extent. 2 Pom. Eq. Jur., Secs. 955–963; Perry on Trusts, Secs. 194–210; *Darlington's Estate*, 147 Pa. St. 624; *Persons* v. *Persons*, 25 N. J. Eq. 250;

*Wormley* v. *Wormley*, 98 Ill. 544; *Jenkins* v. *Eldridge*, 3 Story, 181; *Alaniz* v. *Casenave*, 91 Cal. 41; *Wood* v. *Rabe*, 96 N. Y. 414; *Stickney* v. *Stickney*, 131 U. S. 227; *Garner* v. *Bank*, 151 U. S. 420; *Morris* v. *Nixon's Exr.*, 1 How. 128.

In perhaps every case in which a parol trust in lands has been enforced there was an element of part performance by the complainant, though the courts have frequently overlooked this important consideration in deciding the cases. Where a bill is filed for specific performance of an oral contract for the sale of land, part performance by delivery of possession by the vendor to the vendee is a decisive factor in the case. And it is such a part performance as binds both parties to the transaction. Fry on Specific Performance, Sec. 579; see also Waterman on Specific Performance, Sec. 270; *Johnson* v. *Hubbell*, 10 N. J. Eq. 332; *Ungley* v. *Ungley*, L. R. 5 Ch. Div. 887; *Carmichael* v. *Carmichael*, 72 Mich. 76; *Bird* v. *Pope*, 73 Mich. 483; *Cole* v. *Cole*, 41 Md. 304.

Cases like this in which part performance is relied upon to take a case out of the Statute of Frauds, rest upon the great doctrine of equitable estoppel. When a man, even by his silence, encourages another to do an act to his injury which, but for the silence of the other party, he would not have done, the law will not allow the wrongdoer to open his mouth in court to say what he ought to have said before. It is common knowledge that notwithstanding the Statute of Frauds the title to real estate often passes in this way. *Swing* v. *Seamans*, 9 Wall. 254; *Kirk* v. *Hamilton*, 102 U. S. 68.

2. The conveyance by which William Fletcher transferred the title to certain of the real estate involved in this suit through a third person to his wife, Susan Fletcher, did not invest her with a statutory separate estate in the property so conveyed. *Williams* v. *Reid*, 19 D. C. 46; *Cammack* v. *Carpenter*, 3 App. D. C. 219, 226; *Rathbone* v. *Hamilton*, 4 App. D. C. 475.

3. A grantee claiming under a sealed instrument is bound

by the general character of the consideration stated in the deed. He is not permitted to prove that natural love and affection was the real consideration, if the consideration recited in the deed is a pecuniary one only. *Peocock* v. *Monk*, 1 Ves. 128; *Sewall* v. *Baxter*, 2 Md. Ch. 447, affirmed in *Baxter* v. *Sewall*, 3 Md. 334; *Betz* v. *Bank*, 1 H. & G. 201; *Mangley* v. *Hauer*, 7 Johns. Rep. 341; *Richardson* v. *Trover*, 112 U. S. 431; *Jackson* v. *Alexander*, 3 Johns. 484; *Jackson* v. *Florence*, 16 Johns. 48; *Jackson* v. *Delancey*, 4 Cow. 430.

4. When the question arises in equity, whether a conveyance made to a married woman by, or at the instance of, her husband, shall be sustained as a settlement upon her, the courts attach great importance to the reasonableness or unreasonableness of the transaction as a provision for her. The circumstances under which the transfer is made are held to be always material, and the presumption that it was intended as a gift may be overcome by oral evidence. *Beard* v. *Beard*, 3 Atk. 72; 2 Story Eq. Jur., Sec. 1374; 1 Cord: Legal and Equitable Rights of Married Women, p. 136, Sec. 85*c* (2); Tyler on Infancy and Coverture, 515, 519; Stewart on Husband and Wife, Sec. 125; 14 Am. & Eng. Encyc. L. 567; Harris on Married Women, Sec. 73; Kelly: Contracts of Married Women, 132, 147, 493; Bishop on Married Women, Sec. 754; Ewell's Leading Cases on Coverture, 280; *Warlick* v. *White*, 86 N. C. 139; *Paschall* v. *Hall*, 5 Jones Eq. (N. C.) 108, 110; *Elliott* v. *Elliott*, 1 D. and E. Eq. 62; *Coates* v. *Gerlach*, 44 Pa. St. 43.

In determining whether a gift is a reasonable provision, it is the duty of the court to take into consideration all the circumstances of the case. *Clawson* v. *Clawson's Adm.*, 25 Ind. 229; *Shephard* v. *Shephard*, 7 Johns. Ch. 57; *Mojors* v. *Evertson*, 89 Ill. 56; *Sims* v. *Rickets*, 35 Ind. 181; *Ammon's Appeal*, 63 Pa. St. 284–289.

Courts of equity will not enforce every deed made by a husband to his wife. Bish., Mar. Wom., Sec. 717. Where either fraudulently obtains an unjust advantage, chancery

will relieve. Schouler, Hus. and Wife, Sec. 403; *Wallace* v. *Bowen*, 28 Vt. 640; 1 Story Eq. Jur., Sec. 331.

In all such cases—where property has been conveyed to a married woman by or upon a consideration moving from her husband—the court will inquire into all the facts and circumstances, whether proved by written evidence or oral testimony, and will be governed by what shall then appear to have been the intention of the party. Hill on Trustees, Sec. 97; 14 Am. & Eng. Encyc. L. 581; 10 Am. & Eng. Encyc. L. 26; Schouler on Husband and Wife, Sec. 401; Brown on the Statute of Frauds, Sec. 438; *Marshall* v. *Cruthwell*, L. R. 20 Eq. 328; *Hayes* v. *Kinderley*, 2 S. & G. Ch. 197; *Wallace* v. *Bowers*, 28 Vt. 638; *Darrier* v. *Darrier*, 59 Mo. 222; *Livingston* v. *Livingston*, 2 Johns. Ch. 537.

*Mr. Edmund Burke* and *Mr. W. L. Cole* for the appellees:

1. The several parcels of real estate of which Susan Fletcher holds the legal title are not subject to any trust, express, resulting or implied. A trust does not result to the grantor upon a voluntary conveyance by him, even to a stranger. *Groff* v. *Rohrer*, 35 Md. 327; *Hogan* v. *Jacques*, 19 N. J. Ch, 123; *Jackson* v. *Cleveland*, 15 Mich. 94; *Blodgett* v. *Hildreth*. 103 Mass. 484; *Stephenson* v. *Campbell*, 114 Ill. 19; Hill on Trustees (4th Am. Ed.), 170. In conveyances, though in form deeds of bargain and sale, parol evidence cannot be received to contradict or control the statement of consideration. *Randall* v. *Phillips*, 3 Mason, 385; *Graves* v. *Graves*, 29 N. H. 129; *Filbrook* v. *Delano*, 29 Me. 410; Story's Eq. Jur., Sec. 1197–99, note 1. Where the deed contains a clause that the estate is conveyed to the grantee, his heirs and assigns, to his and their use and behoof, no trust can result to the grantor, as it is a rule that where a trust is declared no other use can be shown to result. *Graves* v. *Graves, supra*; *Sprague* v. *Woods*, 4 Watts & S. 192; *Vandervolgen* v. *Yates*, 5 Seld. 219; *Grove* v. *Learoyd*, 140 Mass. 524; *Gould* v. *Lynn*, 114 Mass. 366; Hill on Trustees, 170.

Voluntary conveyances to a wife or child never were within the rule that such conveyances raise a resulting trust. Story's Eq. Jur. 1203; Perry on Trusts, Sec. 164; *Jackson v. Jackson,* 91 U. S. 124. Such conveyance is presumed to be a provision for the grantee. *Grey* v. *Grey,* 2 Swans. 194; Story's Eq. Jur., Sec. 1204; *Meech* v. *Smithsonian Institution,* 8 App. D. C. 490. Examining the facts and circumstances of these cases in the light of the well-recognized rules of law, it will be found that there are no facts or circumstances proven in these cases, even though parol testimony was admissible, to fix a trust or use of any sort upon the title of Susan Fletcher to any or either of the parcels of real estate owned by her. All of the alleged declarations of William Fletcher, at a time long subsequent to the transactions, according to the universal decisions of the courts, are incompetent and inadmissible for the purpose of rebutting the legal presumption of a gift or settlement. *Groff* v. *Rohrer, supra; Christy* v. *Courtenay,* 13 Beavans, 96; *Temple* v. *Barton,* 18 Ohio, 418; *Williams* v. *Williams,* 32 Beavans, 370; *Sidmouth* v. *Sidmouth,* 2 Beavans, 447; *Bowie* v. *Somstreet,* 6 Md. 418; 1 Greenleaf on Evidence, Sec. 180.

2. The reasonableness of the settlement is not a question that can arise in this case. No interest of creditors is involved. The personal assets in the hands of the administratrix are largely in excess of the debts and liabilities of the estate. It does not appear that he owed any debts at the time of his death, and if he did the creditors, and not the administratrix, are the only persons who could question the settlement of property by him upon his wife. *Tierney* v. *Corbett,* 2 Mackey, 264; *Fellows' Admr.* v. *Smith,* 130 Mass. 378; see also *Conley* v. *Nailor,* 118 U. S. 127; *Jones* v. *Clifton,* 101 U. S. 228.

3. A conveyance by the husband through the medium of a third person to his wife constitutes a valid settlement upon her, even under a statute which allows a married woman to take real estate by gift or grant "from any person other

than her husband." *Hunt* v. *Johnson*, 44 N. Y. 27–36; *Shepherd* v. *Shepherd*, 7. Johns. Ch. 56. And under that statute the husband could convey real estate to a trustee for the benefit of his wife and the trustee might convey the legal title to the wife and be valid. 52 Barb. 474. The husband may transfer lands to his wife through the medium of a third person and they become her separate property. *Barnum* v. *Farthing*, 1 Sheldon, 217; *Fitzpatrick* v. *Burchell*, 59 N. Y. 872; *Wonans* v. *Peebles*, 32 N. Y. 423; *Hunt* v. *Johnson*, 44 N. Y. 27; *Dean* v. *Met. El. R. Co.*, 119 N. Y. 547; 30 N. Y. St. Rep. 81; *Garlick* v. *Strong*, 3 Paige, 440; *Corcoran* v. *Corcoran*, 119 Ind. 138; *Turner* v. *Shaw*, 96 Mo. 22; Beach Mod. Eq. Jur., Sec. 181 *et seq*; *Moore* v. *Page*, 111 U. S. 117.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

We are of opinion that the demurrers ought to have been sustained to the entire bill, and the bill have been dismissed on the demurrers; and this for several reasons.

1. In the first place, the allegations and charges of the bill are entirely too general, vague and indefinite, and extend to matters and things not properly the subject of enforced discovery. The bill is a drag-net, and is a good example of what has been called a vexatious fishing bill, which the court has always regarded with disfavor. By its generality of allegation it embraces and is applicable to everything, but does not refer to things specifically and with certainty; and hence the great difficulty of fairly answering such a bill. There must be reasonable and convenient certainty both as to the objects and subjects of the discovery sought. This case is not unlike, in many respects, the case of *Ryves* v. *Ryves*, 3 Ves. 343, except that was a case of the heir at law against the surviving widow and one of the children of the deceased husband for discovery and account. In that case the bill stated generally that under

10 Ct. App.—39

some deeds in the custody or control of the defendants the plaintiff was entitled to an interest in some estates in the possession of the defendants and who had been in the receipt of the rents and profits thereof, and that the defendants set up and made unfounded claim to such estates. The bill was objected to by way of demurrer for the want of certainty, and the demurrer to the whole bill was allowed by the court. It is a well-settled principle, that, to entitle a complainant to discovery, the facts of which disclosure is sought must be of a certain and specific character, and that the right of a complainant in equity to the benefit of a defendant's oath is limited to such *material facts* as relate to the plaintiff's case, and does not extend to a discovery of the manner in which, or of the evidence by means of which, the defendant's case is to be established, or to any discovery of the defendant's evidence. Wigram on Discovery, p. 90. This principle is wholly disregarded in the required discovery of the defendant, Susan Fletcher. It will not do to state generally that the defendant is in possession of facts that will throw light upon the case instituted for inquiry. The plaintiff must state in respect to what *particular facts* he desires discovery, and show how he is interested in those facts, and their materiality and pertinency to the case for which the discovery is required. Hare, Discovery, 8; Story Eq. Pl., Secs. 565–566. Otherwise, parties would be subject to the most annoying inquisitorial investigations into their private affairs. It is a settled principle, therefore, "that a plaintiff is only entitled to a discovery of what appertains to, or is necessary for, his own title; and he has no right to pry into the title of the defendant. Hence, upon every bill of discovery the defendant has a right to resist, by demurrer, any inquiries which call upon him to disclose the nature and character of his own title to the subject-matter of the controversy." Story Eq. Pl., Sec. 572, and the authorities there cited; also, Hare on Discovery, Ch. 4, pp. 183–194. It is only necessary to examine the terms and general scope

of the inquiry for discovery required of the defendant Susan to see that the limitation of the right in such requirement is greatly transcended, and goes much beyond what the plaintiff is justified in requiring of the defendant.

2. In the next place, under the allegations and prayers of the bill, the defendant Susan is required to set forth a particular statement of every item of property that she received either from her husband or any other person; or that came into her possession or control, and all the gains and profits thereof, during her entire married life; and to account for the same, or such parts thereof (except certain insurance money) as she had in her possession, or under her control at the death of her husband, though she may have received such property at any time within the period of thirty years preceding his death. This manifestly is not only too vague and indefinite, but the great lapse of time involved in the proposed inquiry and required discovery and account, presents upon the face of the bill objections that may be taken advantage of by demurrer, and a general demurrer reaches such objection to the bill. *Foster* v. *Hodgson*, 19 Ves. 180, 185; *Hoare* v. *Peck*, 6 Sim. 51, and cases cited.

3. Then, the defendant Susan is required to state and set forth fully and particularly all the special circumstances of and attending the receipt of any and all property received by her from her husband during the period of her married life; thus making it necessary for her to disclose and set forth the confidential communications between herself and her husband, in regard to all dealings and property transactions between them. This cannot be required of a wife or widow, under the statute, which declares that a wife shall not be compellable to disclose any communication made to her by her husband during the marriage (Sec. 877, R. S. D. C.); and this is but the principle of the common law; and it applies as well after the death as during the lifetime of the husband. *Lucas* v. *Brooks*, 18 Wall. 436, 453; *Stein* v. *Bowman*, 13 Pet. 210, 222. The death of the husband, as said

by the Supreme Court, does not weaken the principle, but rather increases than lessens the force of the rule. 1 Greenl. Ev., Secs. 336, 337; 1 Tayl. Ev., Secs. 830, 831, pp. 810–11; *Hopkins* v. *Grimshaw* (Supreme Court U. S., January, 1897), 165 U. S. 342. And with respect to such question of privilege it is perfectly immaterial whether the objection be taken by demurrer or answer; the defendant is equally protected whether the objection be taken in the one way or the other. *Attorney General* v. *Lucas,* 2 Hare, 556; *Woods* v. *Woods,* 4 Hare, 83.

4. As we have seen, the bill is filed by the administratrix of the deceased William Fletcher, and the right demanded must relate to the personal estate of the decedent alone— the administratrix having nothing to do with the real estate. The bill upon its face must show that the complainant has a right to the thing demanded, or such an interest in the subject matter as gives her a right to institute a suit concerning it. If it is not affirmatively shown by the bill that the party suing has such interest and a right to institute a suit concerning it, the defendant may demur. And this want of interest in the subject of suit, or of a title to institute suit, are objections to a bill seeking any kind of relief, or filed for the purpose of discovery merely. Mitf. Eq. Pl. 154, 155 and 156.

Now, as we have already observed, the decedent in his lifetime conveyed and caused to be conveyed, a large portion of his real estate to his wife Susan, and the deeds were all made absolute in terms, without any reference whatever to any reserved rights or trust, though it is now alleged by the administratrix of the deceased that such deeds were all made and intended to be in trust for the decedent and his heirs. But however this may be, while the deeds remain in force, and in the absence of any declaration of trust, either judicial or by writing, under the Statute of Frauds, the title, both legal and equitable, to the lands conveyed, remains in the grantee, Susan Fletcher; and the rents and profits that

she may have received from the property after the convey-
ances made to her, during the life of her husband, and with
his permission and consent, form no part of the personal
estate of the deceased, and his administratrix is not entitled
to claim them, and is not responsible for them as personal
assets of the estate.   There are no creditors concerned, or
supposed to have been prejudiced by the conveyances, and
the rents, the mere incidents of the estates conveyed, vested
in the grantee, the wife, and the personal representative of
the deceased had no right or title to them as against the
title of the wife.   *Dorsey* v. *Smithson,* 6 H. & J. 61. There
was no right or duty of the mere personal representative
of the deceased to institute proceedings to vacate the deeds,
or to have a trust declared for the benefit of the heirs at
law; that they must do for themselves, if there be ground
for it.

The same observations apply to the case of the deed made
by the decedent to Catharine Laughlin for the farm called
"Sharon." The administratrix has no right or standing
to impeach the validity of the deed, or to have a trust de-
clared thereon.   If it be true as alleged that the deed was
only colorable, and not intended to divest the deceased of
the beneficial title to the land, that is a subject with
which the heirs must deal; but the administratrix has
nothing to do with it, except to enforce payment of the un-
paid purchase money if the deed shall be allowed to stand.
It is an unquestioned principle that a bill must show an
interest in the plaintiff in the subject to which the required
discovery relates, and such an interest as entitles him to
call on the defendant for the discovery.   Mitf. Eq. Pl. 187.
In respect to the conveyances of the lands to the wife, and
of the farm called "Sharon" to Catharine Laughlin, the bill
entirely fails to show any such interest in the complainant
as to entitle her, as administratrix, to maintain the bill,
either for relief or discovery.

5. The last ground of demurrer to the bill that need be

mentioned is that of multifariousness. It is laid down in the works on equity pleading that the court will not permit a plaintiff to demand by one bill, several matters of different natures against several defendants, for this would tend to load each defendant with an unnecessary burthen of costs, by swelling the pleadings with the statement of the several claims against the other defendants with which he had no connection. A defendant may therefore demur because of the multifariousness of the bill; and such demurrer goes to the whole bill; and it seems to be settled that it is not necessary to specify the particular parts of the bill which are multifarious. Mitf. Eq. Pl. 208; 1 Dan'. Ch. Pl. and Prac. 621; *East India Comp.* v. *Coles,* 3 Swanst. 142 *n.*

In this case the multifariousness consists in the improper joining of the matter of the conveyance of the farm called "Sharon" to Catharine Laughlin, with the matters charged against Susan Fletcher; and the improper joining of the matters relating to the subscription to or investment in the stock of the Washington Asphalt Block and Tile Company, the stock or interest therein standing in the name of Charles P. Fletcher, with the matters charged against Susan Fletcher and Catharine Laughlin; all of which matters being several and distinct in their natures, they therefore render the bill multifarious and consequently demurrable.

The several demurrers of the defendants having been overruled by order of the court of the 10th of March, 1894, the defendants were required to answer the bill; and they accordingly filed separate answers under oath.

The principal answer, that of Susan Fletcher, responds to the allegations and charges of the bill against her very fully and circumstantially, so far as she professes to have knowledge of the various matters to which the bill refers and in respect to which discovery is prayed. By her answer, this defendant denies directly, or fully explains, all the material facts as charged in the bill in regard to the personal estate of the deceased; and she completely denies

that she had in her possession or under her control at the time of the death of her husband any money, securities, bonds or other personal property of any nature or kind whatsoever, belonging to him or to his estate. She denies that the real estate referred to in the bill, or any part of it, was conveyed to her in trust, and she denies the existence of all such trust, whether express or by implication, and she relies upon the Statute of Frauds as a bar to the claim made by the complainant in respect to any such trust.

By her answer, Catharine Laughlin denies the allegations of the bill in regard to the conveyance to her of the farm called "Sharon," as being in trust for the benefit of the grantor, William Fletcher, or that there was no consideration paid or intended to be paid by her for the farm.

The averments made in the answers of the other defendants are not material to be stated, for the further consideration of the case.

The answers were all required to be made under oath and where and as far as they are responsive to the allegations of the bill, they are evidence for the respective defendants, and as evidence they will prevail unless overcome by the testimony of two witnesses, or of one witness and clear corroborating circumstances. 2 Sto. Eq. Jurisp., Sec. 1528; *Bank U. S.* v. *Beverly*, 1 How. 134; *Flagg* v. *Mann*, 2 Sumner, 489; *Bank of Georgetown* v. *Geary*, 5 Pet. 99.

There has been a very large volume of testimony taken in this case, much of which is irrelevant and entirely without any probative force whatever. That portion of the evidence, which is mainly relied on by the complainant, to charge Susan Fletcher, the widow and mother of the children of deceased, with fraudulently secreting and concealing the personal estate of her late husband, is of the most unreliable character, and such as the court cannot make the basis or foundation of a decree for an account holding the defendant to be guilty of secreting and concealing the property as charged in the bill, and therefore liable. On the allegations

of the bill, vague and indefinite as they are, and the still more indefinite and uncertain proof, it would be simply impossible to say what property has been concealed and should be accounted for. The evidence relied on is, in large part, merely of a conjectural and inferential character; the complainant, assuming the wife to be, and treating her as agent of her husband, instead of wife merely, and charging her with all the moneys, and receipts of income of whatever nature or kind, of her husband, during the entire period of her married life, and requiring her to acquit herself of such receipts, by showing how the moneys and other property have been disposed of or invested; and, upon failure so to discharge herself, she is sought to be held responsible. There is no principle of law or equity that justifies such proceeding, or that justifies any such inference as that here attempted to be drawn, and made the ground of liability of the surviving wife to the estate of the deceased husband. The *onus* of proof is upon the complainant, and the evidence produced in support of the allegations of the bill, and to charge the surviving wife with secreting and concealing the personal assets of the estate of her deceased husband, is essentially defective, obscure and doubtful, and therefore wholly unsatisfactory; and such evidence is totally insufficient to overcome the evidential force and effect of the sworn answer of the defendant. And therefore there is no sufficient evidence in support of the case of complainant upon which to found a decree. We have carefully examined the entire volume of evidence; and without extending this opinion by a review of the evidence in detail, we deem it sufficient to say, that there is no ground for either relief or discovery shown, and therefore the court below was right in dismissing the bill upon the evidence, regardless of the defects in the bill which were presented by the demurrer. The decree appealed from must therefore be affirmed; and it is so ordered. *Decree affirmed.*